JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

ELISE S. FELDMAN
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Telephone: (415) 744-6470
Facsimile: (415) 744-6476
Email: Elise.Feldman@usdoj.gov

# JS-6

*Attorneys for Plaintiff United States of America*

STEVE C. LEONARD
Leonard & Associates
220 Newport Center Dr. #11-243
Newport Beach, California 92660
Telephone: (949) 759-9600 x106
E-mail: steveleonard@legalarmy.com

*Attorney for Defendant*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>HILL BROTHERS CHEMICAL CO.<br><br>Defendant | CV 15-01545-CJC (MANx)<br><br>**CONSENT DECREE** |

/ / /

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

I.  BACKGROUND ................................................................................................ 1

II.  JURISDICTION .............................................................................................. 1

III.  PARTIES BOUND .......................................................................................... 2

IV.  DEFINITIONS ............................................................................................... 2

V.  STATEMENT OF PURPOSE ......................................................................... 4

VI.  REIMBURSEMENT OF RESPONSE COSTS ............................................. 5

VII.  FAILURE TO COMPLY WITH REQUIREMENTS ..................................... 6

VIII.  COVENANT NOT TO SUE BY PLAINTIFF .............................................. 7

IX.  COVENANT NOT TO SUE BY SETTLING DEFENDANT ......................... 8

X.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION .................. 9

XI.  SITE ACCESS .............................................................................................. 10

XII.  ACCESS TO INFORMATION .................................................................... 11

XIII.  RETENTION OF RECORDS ....................................................................... 12

XIV.  NOTICES AND SUBMISSIONS ................................................................ 13

XV.  RETENTION OF JURISDICTION .............................................................. 15

XVI.  INTEGRATION/APPENDICES .................................................................. 15

XVII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .................. 15

XVIII.  EFFECTIVE DATE .................................................................................... 15

XIX.  SIGNATORIES/SERVICE ......................................................................... 16

XX.  FINAL JUDGMENT ................................................................................... 16

**I.   BACKGROUND**

A.   The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") has filed a Complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, seeking reimbursement of response costs incurred and to be incurred for response actions taken at or in connection with the release or threatened release of hazardous substances at the Puente Valley Operable Unit ("PVOU"), Area 4, of the San Gabriel Valley Superfund Site, Los Angeles County, California (the "Site").

B.   This Consent Decree provides for the reimbursement of a portion of the United States' Past Response Costs at this Site by Hill Brothers Chemical Company, ("Settling Defendant").

C.   By entering into this Consent Decree, Settling Defendant does not admit liability to or arising out of the transactions or occurrences alleged in the Complaint or to any other person related to the Site.

D.   The United States and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

**II.   JURISDICTION**

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, 42 U.S.C § 9607, and 9613(b), and also has personal jurisdiction over Settling Defendant in this action.  Settling Defendant consents to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

1  **III.   PARTIES BOUND**

2      2.      This Consent Decree is binding upon the United States and upon the

3  Settling Defendant and its beneficiaries, heirs, successors, and assigns.  Any change in

4  ownership or corporate or other legal status, including but not limited to, any transfer

5  of assets of real or personal property, shall in no way alter the status or responsibilities

6  of Settling Defendant under this Consent Decree.

7  **IV.   DEFINITIONS**

8      3.      Unless otherwise expressly provided herein, terms used in this Consent

9  Decree which are defined in CERCLA or in regulations promulgated under CERCLA

10  shall have the meaning assigned to them in CERCLA or in such regulations.

11  Whenever the terms listed below are used in this Consent Decree, the following

12  definitions shall apply:

13          a.      "Basin-wide Response Costs" shall mean costs, including but not

14  limited to direct and indirect costs, including accrued Interest, that the United States

15  has paid for basin-wide (non-operable unit) response actions in connection with the

16  San Gabriel Valley Superfund Sites, Areas 1-4.

17          b.      "Carrier Consent Decree" shall mean the consent decree entered on

18  April 28, 2006 in the matter of *United States v. Carrier Corporation*, Civ. Action No.

19  05-6022-ABC (FMOx) (C.D. Cal.), relevant portions of which are attached hereto as

20  Appendix A.

21          c.      "CERCLA" shall mean the Comprehensive Environmental

22  Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et

23  seq.

24          d.      "Consent Decree" shall mean this Consent Decree and Appendix A

25  attached hereto.

26          e.      "Day" shall mean a calendar day.  In computing any period of time

27  under this Consent Decree, where the last day falls on a Saturday, Sunday, or federal

28  holiday, the period shall run until the close of business of the next working day.

f. "DOJ" shall mean the United States Department of Justice and any successor departments, agencies, or instrumentalities of the United States.

g. "Effective Date" shall mean the date of entry of this Consent Decree.

h. "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies, or instrumentalities of the United States.

i. "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

j. "ESD" shall mean the Explanation of Significant Differences issued by EPA on June 14, 2005 for the Record of Decision.

k. "Facility" shall mean the Site.

l. "Future Response Costs" shall mean all costs, including but not limited to Oversight Costs, direct or indirect costs, and Basin-wide Response Costs allocated to the Site, including Interest, that the United States or any third party pays or incurs at or relating to the Site after the date of entry of this Consent Decree, but prior to the later of (i) the date eight (8) years from the Operational and Functional Date of the Carrier Consent Decree, or (ii) the date of issuance of a final Record of Decision for the Site.

m. "Interest" shall mean interest at the applicable rate specified for interest on investments of the Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

n. "Oversight Costs" shall mean all direct and indirect costs, including Interest, that the United States incurs in connection with monitoring and supervising performance of the Response Work by other persons.

o. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

1    p.    "Parties" shall mean the United States and the Settling Defendant.

2    q.    "Past Response Costs" shall mean all costs, including but not

3    limited to Oversight Costs, direct and indirect costs, and Basin-wide Response Costs

4    allocated to the Site, including Interest, that the United States or any third party has

5    paid or incurred at or relating to the Site through and including the date of entry of this

6    Consent Decree.

7    r.    "Plaintiff" shall mean the United States.

8    s.    "Record of Decision" or "ROD" shall mean the September 30,

9    1998 EPA Interim Record of Decision for the Puente Valley Operable Unit (Area 4)

10   of the San Gabriel Valley Superfund Sites, Areas 1-4.

11   t.    "Response Work" shall mean the design and implementation of

12   any remedial measures, including the operation and maintenance thereof,

13   encompassed within the Record of Decision as modified by the ESD.

14   u.    "Section" shall mean a portion of this Consent Decree identified by

15   a Roman numeral.

16   v.    "Settling Defendant" shall mean Hill Brothers Chemical Company.

17   w.    "Site" shall mean the Facility, which consists of an area of

18   groundwater contamination in Los Angeles County, California, located in the

19   geographic area designated on the National Priorities List as the San Gabriel Valley

20   Superfund Site, Area 4 and identified as the Puente Valley Operable Unit.  See 49

21   Fed. Reg. 19480 (1984).

22   x.    "State" shall mean the State of California.

23   y.    "United States" shall mean the United States of America, including

24   its departments, agencies, and instrumentalities.

25   **V.    STATEMENT OF PURPOSE**

26   4.    By entering into this Consent Decree, the mutual objective of the Parties

27   is for Settling Defendant to make a cash payment to address its liability for the Site as

28   provided in the Covenant Not to Sue by Plaintiff in Section VIII, and subject to the

1  Reservations of Rights by the United States in Section VIII, Paragraph 15.

2  **VI.**   **REIMBURSEMENT OF RESPONSE COSTS**

3       5.   <u>Payments to the EPA Hazardous Substance Superfund</u>.  Settling

4  Defendant shall pay to the EPA Hazardous Substance Superfund the amount of One

5  Hundred Thirty Five Thousand Dollars ($135,000) in reimbursement of Past Response

6  Costs.  Payment shall be made as follows:

7       a.   Settling Defendant shall, within thirty (30) Days after entry of this

8  Consent Decree, remit the principal of One Hundred Thirty Five Thousand Dollars

9  ($135,000) to the United States.  Payment to the United States shall be made by

10  FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in

11  accordance with current EFT procedures, referencing the USAO File Number, EPA

12  Region IX, the Site/Spill ID Number 09-8V, and DOJ Case Number 90-11-2-354/35.

13  Payment shall be made in accordance with instructions provided to Settling Defendant

14  by the Financial Litigation Unit of the United States Attorney's Office for the Central

15  District of California following lodging of the Consent Decree.  Any payments

16  received by the Department of Justice after 4:00 p.m. Eastern Time shall be credited

17  on the next business Day.  Settling Defendant shall send notice to the EPA and the

18  DOJ that payment has been made in accordance with Section XIV (Notices and

19  Submissions) and to David Wood, MTS-4-2, Supervisory Accountant, U.S. EPA,

20  Region IX, 75 Hawthorne Street, San Francisco, California 94105.

21       b.   The One Hundred Thirty Five Thousand Dollars ($135,000) paid

22  by Settling Defendant to the United States shall be deposited in the "San Gabriel

23  Valley Superfund Sites, Area 4, Special Account" within the EPA Hazardous

24  Substance Superfund.  This Special Account shall be retained and used to conduct or

25  finance response actions at or in connection with the Site or the San Gabriel Valley

26  Superfund Sites (Areas 1-4), or may be transferred by EPA from this Special Account

27  to the EPA Hazardous Substance Superfund.

28

## VII.   FAILURE TO COMPLY WITH REQUIREMENTS

6.      Interest on Late Payments.  In the event that any payment required under Section VI (Reimbursement of Response Costs) or Section VII, Paragraph 7 (Stipulated Penalties) is not received when due, Interest shall continue to accrue on the unpaid balance through the date of payment.  Settling Defendant shall be liable for any such Interest pertaining to the payments required under Section VI, Paragraph 5.a. (Reimbursement of Response Costs).

7.      Stipulated Penalties.

a.      Settling Defendant shall be liable for stipulated penalties for late payments under Section VI, Paragraph 5.a. (Reimbursement of Response Costs) and for the Interest on late payments under Section VI, Paragraph 5.a. as required under Section VII, Paragraph 6.  The stipulated penalties shall be in the following amounts per violation per Day that any such payment is late:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,500 | 31st Day and beyond |

b.      Settling Defendant shall be liable for stipulated penalties in the amount of $1,500 per Day per violation of the provisions contained in Sections XII (Access To Information), and XIII (Retention of Records).

8.      All Interest and penalties set forth under this Section shall begin to accrue on the Day a violation occurs, and shall continue to accrue through the final Day of the correction of the noncompliance.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

9.      Interest and stipulated penalties shall accrue as provided in Paragraphs 6 and 7, regardless of whether EPA has notified Settling Defendant of the violation or made a demand for payment, but need be paid only upon demand.

10.      Interest and stipulated penalties set forth under this Section shall be due

and payable within thirty (30) Days of the date of demand for payment.  All payments to the United States under this Paragraph shall be made by certified or cashier's check made payable to the "EPA Hazardous Substances Superfund,"  shall be forwarded to the U.S. EPA, Region IX, Superfund Payments, Cincinnati Finance Center, P.O. Box 979076, St. Louis, Missouri 63197-9000, shall indicate that payment is for Interest and/or stipulated penalties, and shall reference EPA Region IX, the Site/Spill Identification Numbers 09-8V, the USAO File Number, the DOJ Case Number 90-11-2-354/35, and the name and address of the party making payment.  Copies of check(s) paid pursuant to this Paragraph, and any accompanying transmittal letter(s), shall be forwarded to DOJ and EPA as provided in Section XIV (Notices and Submissions), and to David Wood, MTS-4-2, Supervisory Accountant, U.S. EPA Region IX, 75 Hawthorne Street, San Francisco, California 94105.

11.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of Interest or stipulated penalties that have accrued pursuant to this Consent Decree.

12.    Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

13.    If the United States brings an action against Settling Defendant to enforce this Consent Decree, Settling Defendant shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

## VIII.  COVENANT NOT TO SUE BY PLAINTIFF

14.    Covenant Not to Sue.  Except as specifically provided in Paragraph 15 (Reservation of Rights), Plaintiff covenants not to sue or to take any administrative action against Settling Defendant for performance of Response Work, Past Response Costs, and Future Response Costs, pursuant to Section 7003 of RCRA, 42 U.S.C. § 6973, or Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a).  This covenant shall take effect upon receipt by Plaintiff of the payments set forth in

Paragraph 5. This covenant is conditioned upon Settling Defendant's satisfactory performance of its obligations under this Consent Decree. This covenant extends only to Settling Defendant and does not extend to any other person.

15. <u>Reservation of Rights</u>. The covenant not to sue set forth in Paragraph 14 does not pertain to any matters other than those expressly specified therein. Plaintiff reserves, and this Consent Decree is without prejudice to all rights against Settling Defendant with respect to other matters, including but not limited to:

a. liability for failure by Settling Defendant to meet a requirement of this Consent Decree;

b. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

c. criminal liability; and

d. liability for response actions and response costs incurred or to be incurred by the United States not covered as matters addressed as set forth in Paragraph 21 of this Consent Decree, including but not limited to liability for any response actions and response costs at the Site that occur after the later of (i) the date eight (8) years from the Operational and Functional Date of the Carrier Consent Decree, or (ii) the date of issuance of a final Record of Decision for the Site.

## IX. COVENANT NOT TO SUE BY SETTLING DEFENDANT

16. Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against Plaintiff or its contractors or employees with respect to Response Work, Past Response Costs, and Future Response Costs, as set forth in this Consent Decree, including but not limited to:

a. any direct or indirect claims for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b. any claims arising out of costs or response actions at or in

connection with the Site, including any claim under the United States Constitution, the California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; and

c.     any claims against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, related to the Site.

17.     Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## X.     EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

18.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Decree may have under applicable law.  Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

19.     The Parties agree that in consideration of the payment made by Settling Defendant and the execution of this Consent Decree, Settling Defendant has resolved its liability to Plaintiff and is entitled to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for matters addressed in this Consent Decree, conditioned only upon entry of this Consent Decree. The matters addressed in this Consent Decree are:  Response Work; Past Response Costs; and Future Response Costs.  The matters addressed exclude those response actions and response costs to which Plaintiff has reserved its rights under this Consent Decree.

20.     Settling Defendant agrees that, with respect to any suit or claim for contribution brought by Settling Defendant for matters related to this Consent Decree,

Settling Defendant will notify DOJ and EPA, in writing not later than sixty (60) Days prior to the initiation of such suit or claim.  Settling Defendant also agrees that, with respect to any suit or claim for contribution brought against Settling Defendant for matters related to this Consent Decree, Settling Defendant will notify DOJ and EPA in writing within ten (10) Days of service of the complaint or claims upon Settling Defendant.  In addition, Settling Defendant shall notify DOJ and EPA within ten (10) Days of service or receipt of any motion for summary judgment or any order from a court setting a case for trial, for matters related to this Consent Decree.

21.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claims based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiff set forth in Section VIII.

**XI.  SITE ACCESS**

22.    Commencing upon the date of lodging of this Consent Decree, Settling Defendant agrees to provide the United States and the State of California and their representatives, including the EPA, the Department of Toxic Substances Control, and the Los Angeles Regional Water Quality Control Board, and their contractors, access at all reasonable times to the property within the Site owned or controlled by Settling Defendant to which access is determined by the EPA to be required for the implementation of this Consent Decree, or for the purpose of conducting any response activity related to the Site, including but not limited to:

a.    Monitoring of investigation, removal, remedial or other activities at the Site;

b.      Verifying any data or information submitted to the United States or to the State of California;

c.      Conducting investigations relating to contamination at or near the Site;

d.      Obtaining samples;

e.      Assessing the need for, planning, or implementing response actions at or near the Site; and

f.      Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XII (Access to Information).

23.      Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, including enforcement authorities related thereto, under CERCLA, the Resource Conservation and Recovery Act, 42 U.S.C. § 6927, and any other applicable statutes or regulations.

## XII.   <u>ACCESS TO INFORMATION</u>

24.      Settling Defendant shall provide to Plaintiff, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating in any manner to response actions taken at the Site or the liability of any person for response actions conducted and to be conducted at the Site, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Site.

25.      <u>Confidential Business Information and Privileged Documents</u>.

a.      Settling Defendant may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by Plaintiff will be accorded the protection

specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to the Plaintiff, or if Plaintiff has notified Settling Defendant that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA, the public may be given access to such documents or information without further notice to Settling Defendant.

b.      Settling Defendant may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege in lieu of providing documents, it shall provide Plaintiff with the following: 1) the title of the document, record, or information; 2) the date of the document, record, or information; 3) the name and title of the author of the document, record, or information; 4) the name and title of each addressee and recipient; 5) a description of the subject of the document, record or information; and 6) the privilege asserted.  However, no documents, reports, or other information created or generated pursuant to the requirements of this or any other consent decree with Plaintiff shall be withheld on the grounds that they are privileged.  If a claim of privilege applies only to a portion of a document, the document shall be provided to Plaintiff in redacted form to mask the privileged information only.  Settling Defendant shall retain all records and documents that it claims to be privileged until Plaintiff has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor.

26.    No claim of confidentiality shall be made with respect to any data, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XIII.  <u>RETENTION OF RECORDS</u>

27.    Until ten (10) years after the entry of this Consent Decree, Settling Defendant shall preserve and retain all records and documents now in its possession or

control, or which come into its possession or control thereafter, that relate in any manner to response actions taken at the Site or the liability of any person for response actions conducted and to be conducted at the Site, regardless of any corporate retention policy to the contrary.  After five (5) years, Settling Defendant may contact EPA in writing to request instructions as to whether such records and documents shall be maintained for the remaining five (5) year retention period, or whether such records and documents may be discarded.  No retained records or documents shall be disposed of prior to the ten (10) year retention period, unless Settling Defendant receives instructions from EPA specifically permitting Settling Defendant to dispose of such records and documents.

28.    After the conclusion of the ten (10) year document retention period in the preceding Paragraph, Settling Defendant shall notify EPA and DOJ at least ninety (90) Days prior to the destruction of any such records or documents, and, upon request by EPA or DOJ, Settling Defendant shall deliver any such records or documents to EPA subject to the same privilege provisions set forth in Section XII (Access To Information).

29.    By signing this Consent Decree, Settling Defendant certifies that, after thorough inquiry, to the best of its knowledge and belief, Settling Defendant has not altered, mutilated, discarded, destroyed, or otherwise disposed of any records, documents, or other information relating to their potential liability regarding the Site, after notification of potential liability or the filing of a suit against Settling Defendant regarding the Site; and that Settling Defendant has fully complied with any and all EPA requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XIV.  NOTICES AND SUBMISSIONS

30.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be forwarded by one party to another, it shall be

directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States (DOJ and EPA) and Settling Defendant, respectively.

<u>As to the United States</u>:

<u>As to DOJ</u>:

W. Benjamin Fisherow
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-2-354/35)
P.O. Box 7611
Washington, DC  20044-7611

Elise S. Feldman
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA  94105
Telephone: (415) 744-6470
E-mail:  Elise.Feldman@usdoj.gov

<u>As to EPA</u>:

Larry Bradfish (ORC-3)
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA  94105

<u>As to Settling Defendant</u>:

Ron Hill, President
Hill Brothers Chemical Company
1675 N. Main Street
Orange, CA  92867

Steve C. Leonard
Leonard & Associates
220 Newport Center Dr. #11-243
Newport Beach, CA  92660

Telephone: (949) 759-9600 x106
E-mail: steveleonard@legalarmy.com

Settling Defendant may change the identity or contact information for its agent at any time by written notice to the Court and to the United States.

**XV.  RETENTION OF JURISDICTION**

31.  This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

**XVI.  INTEGRATION/APPENDICES**

32.  This Consent Decree and its appendix constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.  The following appendix is attached to and incorporated into this Consent Decree:  "Appendix A," which is the relevant portion of the Carrier Consent Decree.

**XVII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT**

33.  This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate.  Settling Defendant consents to the entry of this Consent Decree without further notice.

34.  If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

**XVIII. EFFECTIVE DATE**

35.  The effective date of this Consent Decree shall be the date upon which it is entered by the Court.

**XIX.    SIGNATORIES/SERVICE**

36.    Each undersigned representative of Settling Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

37.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

38.    Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

**XX.    FINAL JUDGMENT**

39.    Upon approval and entry of this Consent Decree by this Court, this Consent Decree shall constitute a final judgment between the United States and Settling Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as the final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS ___16th___ DAY OF___April_____, ___2015_____.


_____
Honorable _Cormac J. Carney___
United States District Judge

1     THE UNDERSIGNED PARTY enters into this Consent Decree, relating to the

2  San Gabriel Valley Superfund Site, Area 4, and further identified as the Puente Valley

3  Operable Unit.

4                                          FOR THE UNITED STATES OF AMERICA

5

6

7  Dated: _____

8                                          JOHN C. CRUDEN
                                           Assistant Attorney General
9                                          Environment & Natural Resources Division
                                           United States Department of Justice
10

11

12  Dated: 3/3/15

13                                         ELISE FELDMAN
                                           Senior Counsel
14                                         Environmental Enforcement Section
                                           Environment & Natural Resources Division
15                                         United States Department of Justice
                                           301 Howard Street, Suite 1050
16                                         San Francisco, CA  94105
                                           Telephone: (415) 744-6470
17                                         Facsimile: (415) 744-6676

18

19

20

21

22

23

24

25

26

27

28

1

2

3   Dated: 11/20/14

4                                           ENRIQUE MANZANILLA
5                                           Director
                                            Superfund Division
6                                           U.S. Environmental Protection Agency Region IX
                                            75 Hawthorne Street
7                                           San Francisco, CA  94105

8

9

10

11  Dated: Oct. 21, 2014

12                                          LARRY BRADFISH
                                            Assistant Regional Counsel
13                                          Office of Regional Counsel
                                            U.S. Environmental Protection Agency Region IX
14                                          75 Hawthorne Street
                                            San Francisco, CA  94105
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    THE UNDERSIGNED PARTY enters into this Consent Decree, relating to the

2    San Gabriel Valley Superfund Site, Area 4, and further identified as the Puente Valley

3    Operable Unit.

4

5                                   FOR SETTLING DEFENDANT

6

7    Dated: *10-16-14*

8                                   RON HILL, President

9                                   Hill Brothers Chemical Company

10

11   Agent authorized to receive service of process pursuant to Paragraph 38:

12

13   *RONALD R. HILL*

14   *1625 N. MAIN ST.*

15   *ORANGE, CA. 92867*

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX A

## RELEVANT PORTIONS OF THE CARRIER CONSENT DECREE



ORIGINAL

1  SUE ELLEN WOOLDRIDGE
   Assistant Attorney General
2  Environment & Natural Resources Division
   United States Department of Justice
3
   MATTHEW A. FOGELSON
4  Environmental Enforcement Section
   Environment & Natural Resources Division
5  United States Department of Justice
   301 Howard Street, Suite 1050
6  San Francisco, CA 94105
   Telephone: (415) 744-6470
7  Facsimile: (415) 744-6476
   E-mail: Matthew.Fogelson@usdoj.gov
8
   ELIZABETH F. KROOP
9  Environmental Enforcement Section
   Environment & Natural Resources Division
10 United States Department of Justice
   P.O. Box 7611
11 Ben Franklin Station
   Washington, DC 20044
12 Telephone: (202) 514-5244
   Facsimile: (202) 514-2583
13 E-mail: Elizabeth.Kroop@usdoj.gov.

14 Additional Counsel Listed on Next Page

FILED
CLERK, U.S DISTRICT COURT
APR 2 5 2006
CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
APR 2 8 2006
CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

___ Priority
___ Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3
___ Scan only

LODGED
CLERK, U.S DISTRICT COURT
MM 12:0
APR 26 2006
CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

15
16          IN THE UNITED STATES DISTRICT COURT
17            CENTRAL DISTRICT OF CALIFORNIA
                   WESTERN DIVISION
18
19 UNITED STATES OF AMERICA,          )
                                      )   Case No. CV-05-6022 ABC (FMOx)
20          Plaintiff,                )
                                      )
21     v.                             )   AMENDED CONSENT DECREE
                                      )
22 CARRIER CORPORATION,               )
                                      )
23          Defendant.                )
24
25
26
27
28
                                              29

                                          -28-
                                          Appendix A

### III. PARTIES BOUND

2. This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3. Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

### IV. DEFINITIONS

4. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"Basin-wide Response Costs" shall mean costs, including but not limited to

-4-

1   direct and indirect costs, including accrued Interest, that the United States has

2   incurred or in the future incurs for basin-wide (non-operable unit) response actions

3   in connection with the San Gabriel Valley Superfund Sites, Areas 1 – 4.

4       "CERCLA" shall mean the Comprehensive Environmental Response,

5   Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, et seq.

6   "Consent Decree" shall mean this Decree and all appendices attached hereto (listed

7   in Section XXX).  In the event of conflict between this Decree and any appendix,

8   this Decree shall control.

9       "Day" shall mean a calendar day unless expressly stated to be a working

10  day.  "Working Day" shall mean a day other than a Saturday, Sunday, or Federal

11  holiday.  In computing any period of time under this Consent Decree, where the

12  last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run

13  until the close of business of the next working day.

14      "DOJ" shall mean the United States Department of Justice and any of its

15  successor departments, agencies, or instrumentalities.

16      "DTSC" shall mean the California Department of Toxic Substances Control

17  and any successor departments or agencies.

18      "Effective Date" shall be the effective date of this Consent Decree as

19  provided in Paragraph 117.

20      "Eligible SEP Costs" shall include the costs of implementing the

21  Supplemental Environmental Project (SEP) required pursuant to Section XVIII,

22  but do not include Settling Defendants' overhead, administrative expenses or legal

23  fees.  Contractor oversight costs not exceeding 5% of $468,750 may be included as

24  Eligible SEP Costs, so long as adequate documentation is provided.

25      "EPA" shall mean the United States Environmental Protection Agency and

26  any of its successor departments or agencies.

27      "Explanation of Significant Differences" or "ESD" shall mean the

28  Explanation of Significant differences relating to the Site issued by EPA on June

-5-

-30-
Appendix A

1   14, 2005.  The ESD is attached as Appendix B to this Consent Decree.

2       "Future Response Costs" shall mean all costs that are incurred by the United

3   States or any third party for response actions with respect to the Site after the

4   Effective Date, but prior to the later of (i) the date 8 years from the Operational and

5   Functional Date, or (ii) the date of issuance of a final Record of Decision for the

6   Site.  Future Response Costs include, but are not limited to, Basin-wide Response

7   Costs allocated to the Site, direct and indirect costs and accrued interest that the

8   United States incurs in reviewing or developing plans, reports, and other items

9   pursuant to this Consent Decree, verifying the Work, or otherwise implementing,

10  overseeing, or enforcing this Consent Decree, including but not limited to payroll

11  costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to

12  Sections VII (Remedy Review), IX (Access and Institutional Controls; including

13  but not limited to the cost of attorney time and any monies paid to secure access or

14  to secure or implement institutional controls including but not limited to the

15  amount of just compensation), XV (Emergency Response), and Paragraph 99 of

16  Section XXII (Work Takeover).

17      "Interest," shall mean interest at the rate specified for interest on investments

18  of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507,

19  compounded annually on October 1 of each year, in accordance with 42 U.S.C.

20  § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the

21  interest accrues.  The rate of interest is subject to change on October 1 of each

22  year.

23      "Interim ROD" shall mean the Interim Record of Decision relating to the

24  Puente Valley Operable Unit of the San Gabriel Valley Superfund Sites signed on

25  September, 30 1998 by the Regional Administrator, EPA Region 9, or his/her

26  delegate, and all attachments thereto. The Interim ROD is attached as Appendix A

27  to this Consent Decree.

28      "Mid-Valley Monitoring" shall mean the installation and monitoring of

1   wells in the intermediate and deep groundwater zones in the mid-valley area of the

2   Site to monitor vertical and horizontal contaminant migration in such groundwater

3   zones, as set forth in the SOW. For purposes of this Consent Decree, the mid-

4   valley shall extend from Azusa Avenue to Puente Creek.

5        "National Contingency Plan" or "NCP" shall mean the National Oil and

6   Hazardous Substances Pollution Contingency Plan promulgated pursuant to

7   Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R. Part 300,

8   and any amendments thereto.

9        "Operational and Functional" shall mean that the Remedial Action, or a

10   phase thereof, has been constructed and that it is performing in accordance with the

11   applicable SOW and the applicable final Remedial Design/ Remedial Action Work

12   Plans and other plans approved by EPA.

13        "Operational and Functional Date" shall mean the date that all phases of the

14   Remedial Action are Operational and Functional pursuant to Paragraph 50.

15        "Paragraph" shall mean a portion of this Consent Decree identified by an

16   Arabic numeral or an upper case letter.

17        "Parties" shall mean the United States and the Settling Defendants.

18        "Past Response Costs" shall mean all costs, including but not limited to

19   Basin-wide Response Costs allocated to the Site, direct and indirect costs,

20   including Interest, that the United States or any third party has paid or incurred at

21   or in connection with the Site, through and including the Effective Date.

22        "Performance Criteria" shall mean the prevention of groundwater in the

23   shallow zone north of Puente Creek at the mouth of Puente Valley with

24   contamination greater than or equal to ten-times the levels listed in Table 2 of the

25   ESD from:

26            (1) migrating beyond its lateral extent as measured at the time the

27            shallow zone Remedial Action containment system is Operational and

28            Functional; and

1        (2) migrating vertically into the intermediate zone;

2    for a period of 8 years from the Operational and Functional Date.

3    "Plaintiff" shall mean the United States.

4    "RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C.

5    §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

6        "Remedial Action" shall mean those activities to be undertaken by Settling

7    Defendants to implement the shallow zone remedy north of Puente Creek and Mid-

8    Valley Monitoring, in accordance with the Interim ROD as modified by the ESD,

9    the applicable SOW, and the applicable Remedial Design/ Remedial Action Work

10   Plans and other plans approved by EPA.

11       "Remedial Action Work Plan" shall mean the document developed pursuant

12   to Paragraph 11 of this Consent Decree and approved by EPA, and any

13   amendments thereto.

14       "Remedial Design" shall mean those activities to be undertaken by Settling

15   Defendants to develop the final plans and specifications for the Remedial Action

16   pursuant to the Remedial Design Work Plan.

17       "Remedial Design Work Plan" shall mean the document developed pursuant

18   to Paragraph 10 of this Consent Decree and approved by EPA, and any

19   amendments thereto.

20       "Section" shall mean a portion of this Consent Decree identified by a Roman

21   numeral.

22       "SEP" shall mean the Woodland Duck Farm Supplemental Environmental

23   Project as described in Paragraph 62, or any alternative Supplemental

24   Environmental Project approved by EPA pursuant to Paragraph 63.

25       "SEP Implementation Plan" shall the mean the document describing the SEP

26   and setting forth those activities required to implement the SEP.

27       "Settling Defendants" shall mean Carrier Corporation and United

28   Technologies Corporation.

1      "Site" shall mean the area of groundwater contamination in Los Angeles

2 County, California, located in the geographic area designated on the National

3 Priorities List as the San Gabriel Valley Superfund Site, Area 4 [see 49 Fed. Reg.

4 19480 (1984)], and identified as the Puente Valley Operable Unit.

5      "State" shall mean the California Department of Toxic Substances Control

6 ("DTSC").

7      "Statement of Work" or "SOW" shall mean the statement of work for

8 implementation of the Remedial Design and Remedial Action at the Site, as set

9 forth in Appendix D to this Consent Decree and any modifications made in

10 accordance with this Consent Decree.

11      "Supervising Contractor" shall mean the principal contractor retained by the

12 Settling Defendants to supervise and direct the implementation of the Work under

13 this Consent Decree.

14      "Unilateral Administrative Order Docket No. 2001-20" or "UAO Docket

15 No. 2001-20" shall mean the order issued by EPA to Carrier Corporation on or

16 about September 13, 2001.

17      "United States" shall mean the United States of America.

18      "Waste Material" shall mean (1) any "hazardous substance" under Section

19 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant

20 under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste"

21 under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous

22 material" under the California Hazardous Waste Control Act Section 25100 et seq.

23      "Work" shall mean all activities Settling Defendants are required to perform

24 under this Consent Decree, except those required by Section XXVI (Retention of

25 Records) and Section XVIII (Supplemental Environmental Projects).

26                V. GENERAL PROVISIONS

27      5.   Objectives of the Parties. The objectives of the Parties in entering into

28 this Consent Decree are to protect public health or welfare or the environment at

1   Decree.

2   XIV. CERTIFICATION OF COMPLETION

3   50.   "Operational and Functional"

4         a.   Within 30 Days after Settling Defendants conclude that the

5   Remedial Action is Operational and Functional, Settling Defendants shall schedule

6   and conduct a pre-certification inspection to be attended by Settling Defendants

7   and EPA. If, after the pre-certification inspection, the Settling Defendants still

8   believe that the Remedial Action is Operational and Functional, they shall submit a

9   written report requesting certification to EPA for approval, with a copy to the

10  State, pursuant to Section XI (EPA Approval of Plans and Other Submissions)

11  within 30 Days of the inspection. In the report, a registered professional engineer

12  and the Settling Defendants' Project Coordinator shall state that the Remedial

13  Action is Operational and Functional. The written report shall include as-built

14  drawings signed and stamped by a professional engineer. The report shall contain

15  the following statement, signed by a responsible corporate official of a Settling

16  Defendant or the Settling Defendants' Project Coordinator:

17       To the best of my knowledge, after thorough investigation, I certify
         that the information contained in or accompanying this submission is
18       true, accurate and complete. I am aware that there are significant
         penalties for submitting false information, including the possibility of
19       fine and imprisonment for knowing violations.

20  If, after completion of the pre-certification inspection and receipt and review of the

21  written report, EPA, after reasonable opportunity to review and comment by

22  DTSC, determines that the Remedial Action is not Operational and Functional,

23  EPA will notify Settling Defendants in writing of the activities that must be

24  undertaken by Settling Defendants pursuant to this Consent Decree in order for the

25  Remedial Action to be Operational and Functional. EPA will set forth in the notice

26  a schedule for performance of such activities consistent with the Consent Decree

27  and the SOW or require the Settling Defendants to submit a schedule to EPA for

28  approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).

-33-

-35-
Appendix A

1  Settling Defendants shall perform all activities described in the notice in

2  accordance with the specifications and schedules established pursuant to this

3  Paragraph, subject to their right to invoke the dispute resolution procedures set

4  forth in Section XX (Dispute Resolution).

5        b.    If EPA concludes, based on the initial or any subsequent report

6  requesting certification, and after a reasonable opportunity for review and

7  comment by DTSC, that the Remedial Action is Operational and Functional, EPA

8  will so certify in writing to Settling Defendants.

9        c.    If EPA fails to certify that the Remedial Action is Operational

10  and Functional within 90 Days after a request, EPA shall be deemed to have denied

11  the request, unless Settling Defendants agree to an extension of time.  Settling

12  Defendants may, at any time thereafter, invoke Dispute Resolution pursuant to

13  Section XX (Dispute Resolution).

14        d.    Nothing herein shall preclude Settling Defendants from

15  requesting, and EPA from granting, pursuant to the same procedures set forth in

16  Subparagraphs a-c of this Paragraph, certification that a phase of the Remedial

17  Action is Operational and Functional; provided, however, that any such

18  certification shall be conditioned on such phase remaining Operational and

19  Functional at the time Settling Defendants request certification for the final phase

20  of the Remedial Action.  In the event Settling Defendants request certification that

21  a phase of the Remedial Action is Operational and Functional, and such request is

22  granted, the resulting certification shall not affect the Operational and Functional

23  Date.

24        e.    Upon approval of the certification report by EPA or pursuant to

25  a ruling by the Court, the Operational and Functional Date shall be the date when

26  the last report requesting certification of the final phase of the Remedial Action

27  was submitted.

28        f.    The Operational and Functional Date established pursuant to

1    this Paragraph shall not be affected if existing contamination greater than or equal

2    to ten-times the levels listed in Table 2 of the SOW has migrated vertically into the

3    intermediate zone and this existing contamination prevents Settling Defendants

4    from meeting the Performance Criteria, provided the Settling Defendants are

5    taking the response actions determined by EPA to be necessary to reverse the trend

6    pursuant to the SOW.

7            g.      Once EPA has determined that the Remedial Action is

8    Operational and Functional pursuant to this Paragraph, the Operational and

9    Functional Date shall not be affected in the event EPA subsequently determines,

10   pursuant to Paragraph 13, that modification to the Work specified in the SOW or in

11   work plans developed pursuant to the SOW is necessary to achieve and maintain

12   the Performance Criteria, to meet discharge ARARs, or to implement Mid-Valley

13   Monitoring.

14           51.     Certification of Completion.

15           a.      No later than 90 Days before, and no sooner than 120 Days

16   prior to, the eight-year anniversary of the Operational and Functional Date, and

17   upon Settling Defendants concluding that the Remedial Action is still Operational

18   and Functional, Settling Defendants shall schedule a pre-certification inspection to

19   be attended by Settling Defendants and EPA.  The Settling Defendants shall submit

20   a Facility Status Package to EPA which shall include, but not be limited to, all

21   maintenance reports, performance reports, sampling results, and all other

22   deliverables updated as appropriate to reflect the performance  and condition of the

23   containment and Mid-Valley Monitoring systems including all wells, pipelines,

24   and treatment facilities.  If, after the pre-certification inspection, the Settling

25   Defendants still believe that the Remedial Action is Operational and Functional,

26   Settling Defendants shall submit a written report by a registered professional

27   engineer, in accordance with the SOW, stating that the  Remedial Action is

28   Operational and Functional.  The report shall contain the following statement,